# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 14-01026-JW |
| | Chapter 13 |
| Louise Marie Sanders, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court on the Objection to Confirmation filed by Tim Whitmore ("Whitmore"), a creditor in this case and former husband of Louise Marie Sanders ("Debtor"). At the hearing, an issue was raised whether the Georgia statute regarding dormancy of judgments, O.C.G.A. § 9-12-60, applied to bar Whitmore's claim. Since this issue, if decided in Whitmore's favor, could affect Debtor's eligibility to be a Chapter 13 debtor under 11 U.S.C. § 109(e), the Court continued the confirmation hearing and requested that counsel submit further briefing on this particular issue. After reviewing the memoranda and considering the arguments and evidence presented at the hearing, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014(c):[1]

## FINDINGS OF FACT

1.   Debtor and Whitmore were previously married, but were divorced by a Final Judgment and Decree ("Judgment"), entered on April 16, 2002, in the Superior Court in Hall County, Georgia. The Judgment incorporated and approved a settlement agreement entered into between the parties on March 7, 2002.

---

[1]   To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted. The parties filed a Joint Statement of Dispute on April 30, 2014, wherein they consented to the Court entering final orders and judgments in this matter.

2. The Settlement Agreement provides, in relevant part:

> As part of the property settlement in this Agreement, Wife shall pay to Husband and Husband shall have and recover of Wife the sum of six hundred thousand ($600,000.00) DOLLARS in cash. This sum shall be due and payable to Husband in one hundred twenty (120) equal installments of five thousand ($5000.00) DOLLARS each due and payable on the first day of each month beginning April 1, 2002 and on each successive month until paid in full. Said payments shall not be includable in the gross income of the recipient or allowable as a deduction to the payor under § 71 or § 215 of the Internal Revenue Code of 1986. The Wife's corporation is presently providing medical insurance for the Husband and his three children. The parties agree that Wife will continue said medical insurance for so long as she is obligated to make monetary payments to Husband pursuant to this paragraph or until Husband requests, in writing, to terminate said medical insurance. The cost of the medical insurance shall be deducted by Wife from the monthly payments due Husband.

3. On February 26, 2014 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

4. Prior to the Petition Date, Whitmore took no action to prevent any of the installments from becoming dormant or to revive any dormant installment obligations.[2]

5. On Schedule F, filed March 11, 2014, Debtor listed Whitmore as an unsecured, nonpriority creditor holding a claim in the amount of $0. Debtor listed the claim as unliquidated and disputed, and described the claim as follows:

> Claim arises out of a family court obligation in 4/16/02 Order. Debtor paid creditor 18 months (5k/mo.) and liquidated family property. She believed she had an agreement with creditor that did not require her to make any further payments.

6. On March 11, 2014, Debtor filed a chapter 13 plan ("Plan").

7. On April 8, 2014, Whitmore filed an objection to confirmation of the Plan ("Objection"), objecting to the characterization of his claim as unliquidated and asserting

---

[2] Whitmore concedes that his Petition for Citation of Contempt to the Superior Court of Hall County, Georgia on December 17, 2013 lacked the requisite notices to properly revive any dormant installment obligations.

2

that Debtor may not be a debtor under chapter 13 due to the debt limits set forth in 11 U.S.C. § 109(e)[3] and that Debtor's plan does not provide for his claim in compliance with 11 U.S.C. § 1322(a)(2).

8. On April 9, 2014, Whitmore filed a proof of claim in the amount of $729,000, based upon the Judgment.

9. On April 24, 2014, Debtor filed an objection to Whitmore's claim, asserting, among other things, that his claim is unliquidated and should be barred by various equitable doctrines, including laches, equitable estoppel, and unclean hands. A hearing on the objection to claim is scheduled for August 6, 2014.

10. On May 27, 2014, Whitmore filed a response to Debtor's objection to his claim.

11. The Court conducted an initial confirmation hearing on May 1, 2014, which was continued to June 12, 2014. At the hearing on June 12, 2014, consideration of confirmation was continued to August 6, 2014, to allow the Court to consider the issue of the applicability of the Georgia statute regarding dormancy of judgments, O.C.G.A. § 9-12-60.

## CONCLUSIONS OF LAW

### I.  Application of Georgia's Dormancy & Revival Statutes

The parties agree that the controlling state law in this matter is the law of the State of Georgia, since Whitmore's claim is based upon the Judgment issued by the Superior Court of Hall County, Georgia and because the Settlement Agreement incorporated within that Judgment expressly states that the application and interpretation of the

---

[3] Section 109(e) of the Bankruptcy Code provides a debt limit of $383,175 for noncontingent, liquidated, unsecured debts in Chapter 13 cases.

Settlement Agreement shall be governed exclusively by Georgia law. Debtor asserts that Whitmore's claim is unenforceable under O.C.G.A. §§ 9-12-60 and 9-12-61, because it has been more than ten years since the Judgment was entered. O.C.G.A. § 9-12-60 is a statute of repose, which provides that a judgment becomes dormant after the expiration of seven years.[4] O.C.G.A. § 9-12-61 provides that a judgment may be renewed or revived within three years after becoming dormant by action or by *scire facias*.[5] However, after the expiration of the three-year period, the judgment is not subject to revival and is barred. In response, Whitmore argues that O.C.G.A. § 9-12-60 does not apply to bar his claim because the Judgment provided for payment of the debt in 120 installments, thus

---

[4] O.C.G.A. § 9-12-60 provides:
(a) A judgment shall become dormant and shall not be enforced:
(1) When seven years shall elapse after the rendition of the judgment before execution is issued thereon and is entered on the general execution docket of the county in which the judgment was rendered;
(2) Unless entry is made on the execution by an officer authorized to levy and return the same and the entry and the date thereof are entered by the clerk on the general execution docket within seven years after issuance of the execution and its record; or
(3) Unless a bona fide public effort on the part of the plaintiff in execution to enforce the execution in the courts is made and due written notice of such effort specifying the time of the institution of the action or proceedings, the nature thereof, the names of the parties thereto, and the name of the court in which it is pending is filed by the plaintiff in execution or his attorney at law with the clerk and is entered by the clerk on the general execution docket, all at such times and periods that seven years will not elapse between such entries of such notices or between such an entry and a proper entry made as prescribed in paragraph (2) of this subsection.
(b) The record of the execution made as prescribed in paragraph (1) of subsection (a) of this Code section or of every entry as prescribed in paragraph (2) or (3) of subsection (a) of this Code section shall institute a new seven-year period within which the judgment shall not become dormant, provided that when an entry on the execution or a written notice of public effort is filed for record, the execution shall be recorded or rerecorded on the general execution docket with all entries thereon. It shall not be necessary in order to prevent dormancy that such execution be entered or such entry be recorded on any other docket.
(c) When an entry on an execution or a written notice of public effort is filed for record and the original execution is recorded in a general execution docket other than the current general execution docket, the original execution shall be rerecorded in the current general execution docket with all entries thereon. When an original execution is so rerecorded, a notation shall be made upon the original execution which states that it has been rerecorded and gives the book and page number where the execution has been rerecorded. When an original execution is so rerecorded in the current general execution docket, it shall be indexed in the current general execution docket in the same manner as if it were an original execution. Nothing in this subsection shall affect the priority of any judgment or lien; and no judgment or lien shall lose any priority because an execution is rerecorded.
(d) The provisions of subsection (a) of this Code section shall not apply to judgments or orders for child support or spousal support.
[5] A *scire facias* is a "writ requiring the person against whom it is issued to appear and show cause … why a dormant judgment against that person should not be revived." Black's Law Dictionary 1347 (7th ed.1999).

4

the seven year period runs from the date each installment becomes due. Accordingly, Whitmore asserts that any payments that became due within the seven year period prior to the Petition Date would still be enforceable as of that date, including 61 installments of $5,000, totaling $305,000.00.

Whitmore relies on Bryant v. Bryant, 205 S.E. 2d 223 (Ga. 1974) and Taylor v. Peachbelt Properties, Inc., 667 S.E.2d 117 (Ga. Ct. App. 2008) to support his argument that the dormancy statute runs from the due date of each installment. In Bryant, Mrs. Bryant was awarded a child-support alimony judgment in a divorce action, requiring Mr. Bryant to pay 20 dollars per week until the youngest of their minor children reached the age of eighteen years, became self-supporting, entered any branch of the armed services of the United States, married or died. Sixteen years later, Mrs. Bryant sought execution on the judgment. Mr. Bryant sought to quash the execution on the grounds that it was not legally collectible under the Georgia dormancy and revival statutes. The Supreme Court of Georgia ruled that "alimony judgments, like all other judgments, are subject to and controlled by our dormancy and revival statutes and any applicable statute of limitations," and further held that "with respect to installment payment alimony judgments, installments that became due within seven years preceding the issuance and recording of the execution are collectible and enforceable, and installments that are dormant, having become due seven to ten years prior to the filing of a revival action, are subject to being revived through the applicable statutory revival procedure."[6] Bryant, 205 S.E. 2d at 225.

---

[6] Bryant was decided before the 1997 amendment to O.C.G.A. 9-12-60, which expressly excluded child support and alimony judgments from the purview of the statute. In this case, the parties agree that the judgment is a property settlement and not alimony or support.

5

In Taylor, Mr. Taylor sought to collect a judgment against his former employer to collect court-ordered workers compensation payments. The judgment ordered the employer to pay a lump sum of $37,747.08 in addition to weekly payments of $127.90. Mr. Taylor did not seek to collect the weekly payments, which remained unpaid, for more than ten years,[7] when he petitioned the court for a writ of *fieri facias*.[8] The court held that Mr. Taylor was entitled to pursue collection of the installment payments by writ of *fieri facias* with regard to sums accruing during the seven years prior to the motion, as those sums were not dormant, however, as to the sums that became due before the seven year mark, those sums had become dormant and could not be the subject of such a writ. Taylor, 667 S.E.2d at 121-22.

Debtor argues the cases cited by Whitmore are distinguishable because neither case address the scenario where a lump sum was due payable in installments, noting that the Bryant judgment had no lump sum obligation and the Taylor judgment had both a lump sum and an installment payment obligation, but they were separate obligations. Debtor further argues that Bryant is distinguishable because it deals with payment of a support obligation, not a property settlement. However, Debtor did not identify, nor could the Court find, any case where a domestic decree or judgment providing for payment of a sum certain according to a payment schedule was determined to be barred by a statute of repose or limitations using the date of the entry of the judgment rather than the date of each installment. Instead, it appears that where a judgment is rendered

---

[7] Mr. Taylor timely revived the lump sum judgment and obtained payment through garnishment proceeding, but failed to include the installment payments in his revival request. The court refused his request to amend the revival order to include the installment payment portion because the request was made outside the term of court.

[8] A writ of *fieri facias* is a writ of execution that directs a marshal or sheriff to seize and sell a defendant's property to satisfy a money judgment. Black's Law Dictionary 641 (7th ed. 1999).

6

payable in installments, the general rule is that the statute of limitations or repose begins to run against it from the time fixed for the payment of each installment for the part then payable. 50 C.J.S. *Judgments* § 1266 (2014).

In other jurisdictions, courts have held that the statute of limitations for enforcement of a property settlement judgment begins to run on the due date for each installment. See e.g., Dilbeck v. Dilbeck, 273 P.3d 40 (Okla. 2012); Johnson v. Johnson, 988 P.2d 621 (Ariz. 1999). The Court finds these decisions instructive.

In Dilbeck v. Dilbeck, the Supreme Court of Oklahoma was presented with a similar situation as the case at bar. 273 P.3d at 41. The divorce decree required Mr. Dilbeck to pay Mrs. Dilbeck a property division in the amount of $109,887, payable in six installments of varying amounts. The Oklahoma Supreme Court held that "the right to enforce periodic payments of property division, pursuant to a divorce decree, accrues on each payment when it is due, and the statute of limitations begins to run on each installment from the time fixed for its payment." Id. at 42. Accordingly, as the statute of limitations had expired as to all payments except one, Mrs. Dilbeck was allowed to pursue only the final installment.[9]

Similarly, in Johnson v. Johnson, the Court of Appeals of Arizona held that a wife was barred by the statute of limitations from recovering some of the monthly installments owed to her by her ex-husband pursuant to a property settlement agreement incorporated within a divorce decree. 988 P.2d at 623-24. The Court of Appeals noted that Arizona

---

[9] The applicable Oklahoma statute is similar to the O.C.G.A. § 9-12-60, providing that "[a] judgment shall become unenforceable and of no effect if, within five (5) years after the date of filing of any judgment that now is or may hereafter be filed in any court of record in this state… execution is not issued by the court clerk and filed with the county clerk..., a notice of renewal of judgment … is not filed, a garnishment summons is not issued by the court clerk; or a certified copy of a notice of income assignment is not sent to a payor of the judgment debtor." 12 Okl. St. Ann. § 735(A).

7

courts adhere to the rule that the limitations period begins to run from the period fixed for the payment of each installment as it becomes due.[10] Id. at 623. Although many of the Arizona cases applying this rule were cases construing the applicability of the statute of limitations to installment payments in judgments pertaining to monthly support orders, the Court of Appeals found this rule to be equally applicable where a judgment or decree orders installment payments in the division of property rights. The Court of Appeals concluded that the wife could only recover payments which became due during the five year period before the enforcement action was filed.

Considering the cases presented by Whitmore, the persuasive authority from other jurisdictions, and the absence of contrary authority from Debtor, the Court finds that the general rule that a statute of limitations or dormancy statute begins to run against a judgment payable in installments from the time fixed for the payment of each installment would also apply to a property settlement judgment in a lump sum that is ordered to be paid in installments pursuant to a divorce decree. Accordingly, O.C.G.A. § 9-12-60 applies to bar Whitmore from collecting any installments coming due prior to February 26, 2007.[11] Any installments that came due after that date are not dormant.

## II. Application of Georgia's Interest on Judgments Statute

Whitmore further asserts that he is entitled to interest on his $305,000.00 claim pursuant to O.C.G.A. § 7-4-12, which, at the time the Judgment was rendered, provided:

> All judgments in this state shall bear interest upon the principal amount recovered at the rate of 12 percent per year unless the judgment is

---

[10] The Arizona statute provides: "[a]n execution or other process shall not be issued on a judgment after the expiration of five years from the date of its entry unless the judgment is renewed by affidavit or process … or an action is brought on it within five years from the date of the entry of the judgment or of its renewal." A.R.S. §12-551(B).

[11] It appears that Whitmore did not seek to renew the Judgment as to the installments coming due in the three year period prior to February 26, 2007 before the automatic stay arose through the filing of the Petition.

> rendered on a written contract or obligation providing for interest at a specified rate, in which case the judgment shall bear interest at the rate specified in such contract or obligation. The postjudgment interest provided for in this Code section shall apply automatically to all judgments in this state and such interest shall be collectable as a part of each such judgment whether or not such judgment specifically reflects the entitlement to such interest.

O.C.G.A. 7-4-12 (2002). Whitmore also relies on Brown v. Brown, 462 S.E.2d 609 (Ga. 1995), wherein the Supreme Court of Georgia found that a wife was entitled to interest when she sought to enforce a judgment of divorce requiring the husband to make monthly installments to pay the wife for her share of the equity in their marital residence, even though interest was not mentioned or otherwise addressed in the settlement agreement incorporated by the judgment. In Brown, the issue presented was when the interest began to accrue, since the original divorce decree issued in 1989 only listed an estimate for the equity and failed to attach an exhibit setting forth the exact figure for the equity amount. A judgment determining the equity amount as the result of a declaratory judgment action brought by the wife was not rendered until 1994. The Court held that O.C.G.A. § 7-4-12 mandates that all judgments bear interest "upon the principal amount recovered," which thereby presupposes the rendition of a judgment for a sum certain or for a mathematically determinable amount without reliance upon additional evidence. Id. at 611. Accordingly, the wife was entitled to interest from the date the declaratory judgment finally determining her equity amount was entered.

In response and without citation of authority, Debtor argues only that that the Judgment plainly ordered the payment of exactly $600,000 by 120 payments of $5,000 each and therefore specifically did not allow for the collection of interest. However, O.C.G.A. § 7-4-12 (2002) expressly provides that "postjudgment interest … shall apply

9

automatically to all judgments in this state and such interest shall be collectable as a part of each such judgment *whether or not such judgment specifically reflects the entitlement to such interest*" (emphasis added).[12] It is clear from the language of the statute and from the Supreme Court's decision in <u>Brown</u> that a judgment's failure to specifically address interest does not prevent the application of interest under O.C.G.A. § 7-4-12.

Whitmore seeks interest from the date each installment payment became due but is uncertain whether the interest rate to be applied should be either (1) a uniform rate as of the date of the Judgment or (2) a changing rate for each installment payment determined on the date each installment became due pursuant to the version of O.C.G.A. § 7-4-12 in effect on that date.[13] Furthermore, since the Settlement Agreement expressly contemplates deductions from the amount owed each month for the providing of medical insurance for Whitmore and his three children, further evidence is needed in order to compute the amount owed under the Judgment, including the application of interest.

## CONCLUSION

Based on the foregoing, the Court finds O.C.G.A. § 9-12-60 applies to bar Whitmore from collecting any installments coming due prior to February 26, 2007 and that interest would apply to the 61 installments coming due from March 1, 2007 through March 1, 2012. A further hearing will be held on August 6, 2014 to consider Debtor's remaining arguments against Whitmore's claim, including, but not limited to, applicable deductions and equitable arguments, to determine the amount of Whitmore's claim in

---

[12] The present version of O.C.G.A. § 7-4-12(c), similarly provides that "[t]he postjudgment interest provided for in this Code Section shall apply automatically to all judgments in this state and the interest shall be collectable as part of each judgment whether or not the judgment specifically reflects the entitlement to postjudgment interest."

[13] Since July 1, 2003, O.C.G.A. § 7-4-12 has provided for a judgment interest rate equal to the prime rate plus 3 percent.

light of the findings set forth in this Order, and to determine Debtor's eligibility under 11 U.S.C. § 109(e).

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**07/28/2014**



*John E Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 07/28/2014